UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: )
)
PRD, LP, an Illinois limited partnership, )
)
                Debtor. )
)
_____ )
)
PRD, LP, an Illinois limited partnership, )
)
                Debtor-Appellant, )
    vs. )
)    06 C 1669
FRANKLIN DELANO LÓPEZ; JARDIN EL )
AIBONITENO; TSI TONY SANTIAGO, INC. )
d/b/a JAS CONSTRUCCIONES; )
ARGRIMENSORES ASOCIADOES; )
ALVARADO ASSOCIATES; JLD )
ELECTRICAL SERVICES, INC.; ESTATE )
OF MILTON M. RUIZ d/b/a MILTON M. )
RUIZ & ASSOCIATES; LUGO-CARRERAS y )
ASOCIADOS, CSP; PEDRO CORTES & )
ASSOCIATES; VALCARCEL )
CONSTRUCTION, INC.; ASOCIACION de )
RESIDENTES de SAVANNAH REAL; )
ALVARADO ASSOCIATES; JLD )
ELECTRICAL SERVICES, INC., )
)
                Appellees. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on appeal from the Bankruptcy Court. For the reasons set forth below, the February 2, 2006, order transferring venue of the proceeding to the District of Puerto Rico is affirmed.

**BACKGROUND**

Appellant PRD LP ("PRD") is a limited partnership with its principal offices located in Skokie, Illinois. PRD is comprised of a general partner and two limited partners. The general partner is an Illinois corporation, PRD, Inc.; the two limited partners are Century Development Group, another limited partnership, and Franklin Lopez, a natural person who lives in Puerto Rico.

PRD was formed to build single-family homes on a parcel of real estate in San Lorenzo, Puerto Rico. In addition to being a limited partner, Lopez supervised PRD's activities in Puerto Rico. Construction was to take place in two phases. The first phase was completed, but at a much higher cost than anticipated. The second phase of building never took place. On August 6, 2004, PRD entered into a contract to sell the land on which the second-phase homes were to have been located.

About one month later, Lopez and other Puerto Rican residents who had been involved with the project sued PRD and other related entities for breach of contract, breach of fiduciary duty, and other causes of action in Puerto Rico. Proceedings in that lawsuit eventually yielded an order commanding that any proceeds from the sale of the

real estate be deposited with the clerk of the Puerto Rican court pending the outcome of a preliminary injunction hearing in that case. Three days before a hearing scheduled to consider the entry of the injunction, PRD filed for bankruptcy in the Northern District of Illinois. Shortly thereafter, the land was sold to liquidate the assets of the bankruptcy estate.

About a month after the bankruptcy proceeding began, several Puerto Rican creditors including Lopez moved to transfer the bankruptcy proceeding to the District of Puerto Rico. The motion was once amended to include additional movants. On January 26, 2006, after full briefing and oral argument, the bankruptcy judge granted the motion and ordered the proceeding transferred. PRD timely sought an interlocutory appeal of the order.

## JURISDICTION

District courts have jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges pursuant to 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

The parties have not provided, nor has our research revealed, any Seventh Circuit precedent definitively establishing the standard of review to be applied in a case involving a transfer effectuated pursuant to 28 U.S.C. § 1412 when both potential jurisdictions are proper venues for the bankruptcy proceeding. However, the

controlling factors under § 1412, namely the convenience of the parties and the interests of justice, are identical to those considered under 28 U.S.C. § 1404(a), which pertains to motions to transfer venue in nonbankruptcy cases. It is well-settled that the grant or denial of a motion under § 1404(a) is reviewed for abuse of discretion. North Shore Gas Co. v. Salomon, Inc., 152 F.3d 642, 648 n.3 (7th Cir. 1998). In light of the highly fact-specific nature of both types of considerations and the absence of any convincing argument from the parties why the same standard should not apply to § 1412, we will employ the abuse of discretion standard. Under this deferential standard, the bankruptcy court's order will stand unless the record contains no evidence on which the court could rationally rely or if no reasonable person could agree with the decision. See In re KMart Corp., 381 F.3d 709, 713 (7th Cir. 2004); In re Morris, 223 F.3d 548, 554 (7th Cir. 2000). The latter situation generally occurs only when the decision rests on an incorrect legal principle or a factual finding that is clearly erroneous. See KMart, 381 F.3d at 713.

## DISCUSSION

The transcript of the motion hearing reflects that the bankruptcy judge considered both of the considerations enumerated in § 1412. Mtn. Hr'g Tr. 29-33, Jan. 26, 2006. In deciding which jurisdiction best suited the convenience of the parties, he employed the six-factor test set forth in Kotlicky v. Belford, 64 B.R. 679, 682 (Bankr.

N.D. Ill. 1986). As between the two potential venues, the test looks to the proximity of the creditors, the debtor, the witnesses who will be necessary to the estate's administration, and the assets of the estate. See id. The fifth factor considers which of the two venues would allow the estate to be administered more economically, and the sixth examines the impact of any ancillary administration if bankruptcy should result. See id. Because bankruptcy had already occurred in this case, the sixth factor was not at issue.

With respect to the first factor, the bankruptcy judge noted that the number of creditors from Illinois was about the same as the number from Puerto Rico. While recognizing that the amounts of the Illinois creditors' claims exceeded those of the Puerto Rican creditors, the judge juxtaposed that fact against the reality that the Illinois creditors would have known that all of the project's activity was to take place in Puerto Rico. Clearly the latter goes to the fairness aspect of the interest of justice consideration rather than the proximity of the creditors. However, as the decision whether to transfer rests on the interrelationship of all the specific traits of a case, it was perfectly appropriate for the bankruptcy judge to address more than one aspect at a time. He employed the same analysis for the second factor.

For the third factor, the judge looked at the location of witnesses. While focusing on the claims of the Puerto Rican creditors, he acknowledged that there were

other witnesses who would be inconvenienced if the proceeding took place in Puerto Rico but concluded that the Puerto Rican witnesses would be more inconvenienced than those whose location is more proximate to Illinois.

Turning to the fourth factor, the judge recognized that the assets of the estate had been located in both Illinois and Puerto Rico at different points in the proceeding. He concluded that the fact that the asset was originally a piece of real estate meant that this factor weighed more toward Puerto Rico than Illinois. PRD argues that the judge should have reached a different conclusion, but they do not provide any authority to indicate that he was required to do so.

The judge then looked to the fifth factor and concluded that the Puerto Rican courts were perfectly capable of efficiently administering the estate. Again, he brought in the notions of fairness that pertain to the interest of justice consideration of § 1412 by noting that the choice to do business away from home can mean that one must settle disputes away from home. We do not quarrel with PRD's contention that this factor is an important one and one that has been given primary significance in other cases. However, none of the case law PRD has provided indicates that any one factor is dispositive. Because of the factual emphasis of this type of decision, the outcome of any one case will seldom if ever dictate the outcome of another. More importantly, §

1412 plainly does not say that a bankruptcy court[1] may transfer a proceeding only when it can be more economically conducted in the transferee court. We decline to accept PRD's invitation that we interpret it in such a way.

Taking into account all of the particulars described, the judge concluded that it was appropriate to transfer venue from the Northern District of Illinois to the District of Puerto Rico. In arguing that the court abused the significant discretion it had on this matter, PRD's arguments do not contend that the bankruptcy judge used an incorrect legal framework in reaching his decision. Neither do they argue that the facts upon which he relied were erroneous.[2] Instead, their contentions center on the judge's conclusion that the facts presented were sufficient to make it more likely than not that venue should be transferred to Puerto Rico.[3] Rather than demonstrating that the judge

---

[1]Though the language of the statute refers only to transfer by a district court, transfers can be effectuated from the bankruptcy courts in the first instance if the receiving court has a general reference of all bankruptcy matters to its bankruptcy court. See In re Hillsborough Holdings Corp., 146 B.R. 1008, 1010 (Bankr. M.D. Fla. 1992). Puerto Rico has such a reference. In re Bankruptcy Courts, (D.P.R. July 19, 1984).

[2]PRD makes much of the fact that the bankruptcy judge did not conduct an evidentiary hearing before ruling on the motion. However, they have identified no fact that was disputed; as the bankruptcy judge noted, there is no need for an evidentiary hearing if the facts are not in dispute. Mtn. Hr'g Tr. 29 ll. 19-22.

[3]Though in several instances, PRD's brief attempts to cast the burden on the movants as more substantial than the preponderance of the evidence test, there can be no question that this is the correct measurement. See, e.g., In re Manville Forest Products Corp., 896 F.2d 1384, 1390 (2d Cir. 1990); In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1241 (5th Cir. 1979).

erred in his decisionmaking, PRD's position underscores the highly factual nature of the decision to be made when a bankruptcy court is asked to choose between two proper venues. PRD's presentation boils down to an assertion only that the bankruptcy judge should have placed more weight on certain factors and thereby reached a different outcome. That does not change the fact that he analyzed the undisputed facts presented to him within the proper legal framework. Our review is limited to whether he misapplied the law or reached a conclusion that no reasonable person could reach, not whether we would reach the same outcome if we were deciding the motion in the first instance. Having performed such a review, we conclude that the bankruptcy judge exercised his discretion in an eminently proper manner.

## CONCLUSION

The judgment of the bankruptcy court is affirmed.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   August 22, 2006